Charlie Ervin **WALLER**, Appellant,

v.

**PROFESSIONAL INSURANCE CORPO-RATION, J. R. Reinhardt and J. Edwin Larson, Appellees.**

No. 18896.

United States Court of Appeals Fifth Circuit.

Dec. 7, 1961.

T. Edward Austin, Jr. and Moore & Austin, Jacksonville, Fla., for appellant.

James G. Mahorner, Asst. Atty. Gen., Dean Boggs, Jacksonville, Fla., Richard W. Ervin, Atty. Gen., Robert J. Kelly, Asst. Atty. Gen., Boggs, Blalock & Holbrook, Jacksonville, Fla., for appellee, Professional Ins. Corp.

Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiff, Charlie Ervin Waller, appeals from the district court's dismissal

of his action against Professional Insurance Corporation and two Florida Insurance Commission officials, Reinhardt and Larson, for failure to state a claim presenting an amount in controversy sufficient to provide federal district court jurisdiction under 28 U.S.C.A. § 1332. We reverse.

December 26, 1947, Waller purchased from Professional Insurance Corporation a single premium life insurance policy in the face amount of $50,000. As part of the insurance plan, he borrowed $22,950 from the company to finance his payment of the premium of $22,971.18. He executed a "Policy Loan Note" to Professional to cover this debt, promising to pay interest "at the rate of 4% per annum, payable annually quarterly in advance." The note is tied to the policy. It recites that it was given for a policy loan on Policy Number L00-8982 and that the policy was assigned to Professional as security for the payment of the note and interest. If not paid, the note and interest are to be deducted from the proceeds payable on maturity of the policy. The note provides also that "if and when the unpaid principal and interest of the note shall equal the then cash surrender value of the  * * *  policy  * * *  said policy  * * *  shall terminate and become void."

Unknown to the parties, this agreement contained built-in trouble:  a provision in the policy conflicts with the four per cent interest rate fixed in the note. The policy provides:  "Policy Loans—When values are available according to the Table of Non-Forfeiture and Loan Values or extension thereof, and while this policy is in force, 'Professional' will lend to the 'Policyowner', on proper assignment of this policy to 'Professional' and on the sole security hereof *with compound interest of 5% per annum,* a sum not in excess of the amount in the loan value column  * * *." The conflict went unnoticed for twelve years. During all these years Waller made regular interest payments at the 4% rate, Larson, State Treasurer and Insurance Commissioner, and Reinhardt, Senior Insurance Examiner, announced the trouble November 24, 1959. In a letter to Professional the Treasurer's Office pointed to a Florida statute [F.S. § 635.-02, now section 626.0610] prohibiting "discrimination between insurants of the same class  * *  as to  * * *  premiums or rates  * *  or in any other of the terms and conditions of the contracts." It called upon Professional to correct the interest differential in the 4% policy loan agreements under policies providing for a 5% interest rate, and to collect the back interest allegedly due. Professional promptly wrote Waller demanding $3,-835.63 back interest.[1] Since then Waller has paid interest at the 5% rate, under

---

1. The letter reads as follows:
    "Re: 4% Policy Loan Agreements Under 5% Contract.
    "Dear Mr. Maddox:
    "In order to clarify the above subject please refer to Florida Insurance Statutes 635.02, which state:
    " 'No life insurer doing business in this state shall make or permit any distinction of discrimination between insurants of the same class or equal expectation of life as to the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, *or in any other of the terms and conditions of the contracts it makes.* Nor shall any insurer or any agent thereof, make any contract of insurance or agreement as to

such contract other than as plainly expressed in policy issued thereon.'  (*Emphasis added.*)
    "One of the provisions of these policies provides for loan values on the sole security of the policy, with compound interest at the rate of 5% per annum. The 4% loans were made under 'old' management and 'new' management was apparently unaware of the difference between the contract provisions and the policy loan notes.
    "There is no evidence that there had been any approval by the Actuary and Examiner for the Florida Department, at that time. Nor that there has been approval by the Florida Insurance Department, or the Zone, on three previous

protest, to protect his investment and insurance coverage. He has not paid the back interest.

In this suit Waller asks the Court for a wide variety of relief: (1) that the Court adjudge Professional not entitled to any of the back interest, and that the amounts plaintiff paid under protest be refunded; (2) that Professional be restrained from making any claim against the plaintiff based upon an interest rate other than 4%; (3) that the two Florida officials be restrained from interfering with the plaintiff's insurance contract and note; (4) that the Court declare 4% as the rate due according to the intention of the parties; (5) in the alternative, should the Court determine 5% as the rate, that the Court declare the entire contract illegal in its inception and refund to plaintiff premiums and interest, amounting to $15,954.33 as of the date of filing the complaint; (6) in the further alternative, that the Court rescind the contract for failure of consideration and mistake and refund to the plaintiff all amounts paid; (7) again in the alternative, that the Court hold the defendants are estopped.

The trial judge dismissed the suit for lack of jurisdiction, stating that "involved here is simply the difference between the 4% interest actually collected upon the $22,950.00 note and the 5% interest which the defendant Professional has sought to collect at the direction of the defendants Reinhardt and Larson * * * 1% of $22,950.00 for 12 years, which * * * amounts to $3,835.63 when compounded at 5% per annum."

The plaintiff's complaint, the good faith of which is not contested, makes it impossible to restrict the issues to the narrow confines of the insurance company's claim for back interest payments allegedly due. The validity of this claim depends on the validity of the $50,000 insurance policy and the $23,000 note. It may well be, as the plaintiff alleges, that the Court will determine that the note or the note and policy together were invalid initially because of illegality or mistake or for some other reason; Waller's complaint effectively puts these questions in issue. Or the Court may find that the 4% rate stated in the note is binding and the contract valid. However the Court may decide, it cannot limit its inquiry to Professional's claim to back interest; it must rule on the validity of the underlying agreements to which the interest rate applies. Since the relief sought requires an adjudication of the legal effect of the insurance policy and the policy loan, their values determine the amount in controversy. Home Ins. Co. of New York v. Trotter, 8 Cir., 1942, 130 F.2d 800; see C. E. Carnes & Co. v. Employers' Liability Assur. Corporation, Limited of London, England, 5 Cir., 1939, 101 F.2d 739.

Similar decisions in analogous situations support this result. Thus, courts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions (Miller v. Woods, 87 U.S.App.D.C. 324, 1950, 185 F.2d 499), in suits for specific performance of a contract to convey realty (Ebensberger v. Sinclair Refining Co., 5 Cir., 1948, 165 F.2d 803, cert. denied 335 U.S. 816), and in suits to remove a cloud from the title of realty (Jones v. Box Elder County, 10 Cir., 1931, 52 F.2d 340, cert. denied 285 U.S. 555). Underlying these cases is the principle that when the validity of a contract or a right to property is called

---

occasions. The mere fact that the question has never been brought to light before does not indicate approval.

"There are four such loans of this type in force; however, all other policyholders are paying interest rates on their policy loans in accordance with their respective policy provisions.

"In fairness to all policyholders, and in compliance with Florida Statutes this situation should be corrected at once, with interest collected retroactively.

"Very truly yours,
J. R. Reinhardt,
Senior Examiner."

"Record, pp. 15–16.

into question in its entirety, the value of the property controls the amount in controversy. That principle applies with full force to the instant case. Since both the note and the policy are well in excess of the jurisdictional amount, the district court has jurisdiction of the case. Not to be overlooked is the plaintiff's prayer for an injunction against Professional, the effect of which—should it be granted—would be to allow a $50,000 policy to continue until maturity.

Larson and Reinhardt, Florida officials, argue that this Court should abstain from adjudicating this dispute in order to allow the Florida courts to decide the questions of state law involved in the case. At this preliminary state of the proceedings, however, we cannot see that this case will require the district court to determine any more difficult questions of state law than are regularly handled by the federal courts.

The order dismissing the case for want of jurisdictional amount is

Reversed.

JONES, Circuit Judge, (dissenting).

The district court concluded that the amount involved in this cause was $3,-835.63, the difference between 4% and 5% of the interest collected. My review of the record, the briefs, and the opinion of the majority has convinced me of the correctness of the district court's determination. The jurisdictional amount was absent.

The demands of the Florida officials upon the insurance company cannot require it to cancel insurance on the life of appellant if such cancellation would be contrary to law. A judgment, finding the 4% rate proper, in an action between the appellant and the insurance company would give him full protection. This being so, and nothing being shown to indicate any attempted coercion of appellant by state officials, it follows, I think, that no cause of action is stated against the state officials. Even though such jurisdiction is present, this is a case where the court, in the exercise of its discretion, should decline to exercise that jurisdiction. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424.

I dissent.