[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16445
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-01343-JDW-EAJ


DOUGLASS MANN,
STEPHANIE MANN,
Individually and on behalf of all others
similarly situated,

Plaintiffs - Appellees,

versus

UNUM LIFE INSURANCE COMPANY OF AMERICA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 29, 2013)

Before BARKETT, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Appellant Unum Life Insurance Company of America (Unum) appeals the district court's order granting the Appellees Douglass and Stephanie Mann's motion to remand this class action to state court. After thoroughly reviewing the briefs and record on appeal, we affirm the district court's order.

This class action concerns a putative class of Florida residents who purchased Unum's Long Term Care Policies (LTC Policies) before their relocation to Florida. Douglass and Stephanie Mann, the named plaintiffs, purchased their LTC Policies in 1998, when they lived in Connecticut. In 2005, the Manns became permanent Florida residents.

Since 2005, several states, including Connecticut, have authorized Unum to increase its premium rates. Florida is not one of those states. The Manns have been paying Connecticut rates since at least 2008, despite being Florida residents. In May 2012, the Manns filed a class action complaint against Unum in the Circuit Court of Manatee County, contending that Unum could only charge them Florida-approved rates. The Manns requested a declaratory judgment, damages in the amounts charged in excess of the rates allowed by Florida law, injunctive relief to prevent future harm, and attorneys' fees.

In June 2012, Unum removed this action to federal court, contending that federal jurisdiction existed under the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d), 1441(b) and 1453(b), because: (1) the parties were minimally diverse

2

under 28 U.S.C. § 1332(d)(2)(A); (2) the number of putative class members exceeded 100, satisfying the requirements of § 1332(d)(5)(B); and (3) the amount in controversy exceeded $5 million.

To support the amount-in-controversy requirement, Unum submitted the affidavit of Pamela Tait, an Assistant Vice President Pricing Actuary employed by Unum. Tait determined that the putative class consisted of 2,194 individuals, who from 2008 to 2012 collectively paid $2,997,911 more than what Florida law would have allowed. This left Unum $2 million short of federal jurisdiction, so Tait crossed the $5 million threshold with the following prognostication:

> [I]f these 2,194 policyholders were charged premium on a going-forward basis as if the policies were delivered and issued for delivery in Florida, instead of the states in which the policies were delivered and issued for delivery, the additional premium amount . . . would be $11,142,710 . . . .

In other words, an adverse judgment would require Unum to lower its rates for the putative class, which would cause Unum to forego $11,142,710 in future revenue, bringing the total amount in controversy to $14,140,621. Tait's calculation made several assumptions about claim incidence, mortality, and lapse rates. The Manns moved to remand the case to state court, arguing that Tait based her calculations on improper speculation. Agreeing with the Manns, the district court remanded the case to state court, and this appeal followed.

3

We review de novo a district court's decision to remand a CAFA case to state court for lack of subject matter jurisdiction. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). As always, we strictly construe removal statutes, resolving all doubts in favor of remand. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006).

Unum, as the removing defendant, bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeded $5 million. *Pretka*, 608 F.3d at 752. Because the $11,142,710 amount would stem from an injunction, we must analyze it from the plaintiff's perspective. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). "The value of injunctive or declaratory relief for amount in controversy purposes is the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002). When the value of injunctive relief is "too speculative and immeasurable," it will not be included in the amount in controversy. *Id.* (internal quotation marks omitted) (holding that the injunctive relief in question—requiring insurers to compensate class members for diminished value on any future damaged vehicle claims—was too speculative). We are mindful that "[o]nly prophetic ken of a rare order could forecast what will ensue." *Vicksburg, S. & P. Ry. Co. v. Nattin*, 58 F.2d 979, 980 (5th Cir. 1932).

4

We agree with the district court that Unum's calculation of the injunction's monetary value is speculative, and we find our decision in *Leonard* to be directly on point.  In *Leonard*, we held that when plaintiffs are "free to refuse to purchase the insurance offered by the defendants," an injunction "will not be of any monetary value to the class members, and *cannot be considered for amount in controversy purposes*."  *Leonard*, 279 F.3d at 973 (emphasis added).  The injunctive relief in *Leonard* was admittedly different from the relief sought here: there, the plaintiffs sought an injunction preventing the defendants from selling car-rental insurance in the future, *see id.*, whereas in this case the equitable relief would be a lower premium rate in the future.  Yet the same rationale applies, because in both cases, the plaintiffs "have always been free to refuse to purchase the insurance offered by the defendants."  *Id; see also Lutz v. Protective Life Ins. Co.*, 328 F. Supp. 2d 1350, 1361 (S.D. Fla. 2004) (holding injunctive relief immeasurable because "Plaintiff as well as other class members will be able to avoid paying for this insurance, regardless of whether an injunction is granted").  We cannot say that an injunction in this case will *necessarily* trigger a "flow" of money to the plaintiffs, because even Unum concedes in its brief that the LTC Policies are renewable each year.  *Leonard*, 279 F.3d at 973 (holding that the value of injunctive relief is "the monetary value of the object of the litigation that would flow to the plaintiffs if the injunction were granted").

5

Unum's reliance on *Pretka* is unconvincing. In *Pretka*, we fleshed out the standard for establishing CAFA's amount-in-controversy requirement, holding that "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" did not amount to improper speculation. 608 F.3d at 754. The defendant in *Pretka* had included in its notice of removal a declaration that it had "collected more than $5 million in condominium unit purchase deposits from prospective purchasers of units." *Id.* at 770 (internal quotation marks omitted). In the present case, the future loss of revenue from yet-to-be renewed policies is strikingly different. Moreover, we are bound by our decision in *Leonard*, which forbids the inclusion of optional insurance purchases in an amount-in-controversy calculation. *Leonard*, 279 F.3d at 973. In a word, such valuation is speculative, filled to the brim with assumptions about policyholder behavior and Florida insurance rates.

For the forgoing reasons, we affirm the district court's order remanding this case to state court.

**AFFIRMED.**