[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10001
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cv-61759-WPD

SOUTH FLORIDA WELLNESS, INC.,
individually, and on behalf of all others similarly situated,

Plaintiff-Appellee,

versus

ALLSTATE INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 14, 2014)

Before CARNES, Chief Judge, MARCUS and PRYOR, Circuit Judges.

CARNES, Chief Judge:

This appeal brings us the issue of whether the Class Action Fairness Act's $5,000,000 amount-in-controversy requirement can be satisfied if the plaintiff seeks only declaratory relief. If it can be, there is federal jurisdiction in this case. If it cannot be, there is not. Concluding that a pure declaratory judgment action could not carry the required jurisdictional freight, the district court remanded the case to state court. Concluding that a declaratory judgment action can be up to the task, and that this one is, we reverse.

I.

In January 2012 Florencio Sanchez was injured in an automobile accident and received medical treatment at South Florida Wellness, Inc. (Wellness), a Florida-based healthcare provider. Sanchez was insured by Allstate Insurance Company under a policy that provided her with personal injury protection (PIP) coverage, and in connection with treatment that she received there, Sanchez assigned to Wellness her right to benefits under that policy. Wellness sought payment of 80% of the amount it had billed Sanchez, but Allstate paid a lower amount based on its interpretation of Sanchez's policy. Instead of paying 80% of the total amount billed, Allstate paid Wellness only 80% of certain amounts set out in the statutory fee schedule contained in Fla. Stat. § 627.736(5)(a).

The general rule for PIP coverage in Florida is that an insurance policy must cover 80% of all reasonable costs for medically necessary treatment resulting from

2

an automobile accident, subject to certain limits.  See Fla. Stat. § 627.736(1)(a).

That is the payment Wellness sought from Allstate.  Florida law also provides,

however, that an insurer may opt out of the general payment rule and instead limit

payment to 80% of a statutory fee schedule.  See id. § 627.736(5)(a).  Allstate

claims that it opted out of the general payment rule in favor of the more limited

statutory fee schedule approach in its Florida PIP policies, including the one that

covered Sanchez.

In July 2013, Wellness filed this putative class action in Florida state court,

contending that a recent Florida Supreme Court decision requires any insurer

choosing to limit payments to the statutory fee schedule to clearly and

unambiguously indicate in the insurance policy that it is doing so.  See Appellee

Brief at 2; see also Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc., — So. 3d

—, 2013 WL 3332385, at *8, *10 (Fla. July 3, 2013).  Wellness claims that

Allstate failed to do so.  Its complaint proposed the following class:

> Any and all health care providers and insureds who submitted claims
> for no-fault benefits under PIP policies which were in effect from
> March, 2008, where Allstate utilized the reimbursement methodology
> pursuant to Florida Statute 627.736(5)(a)2(a-f) (2008) (the fee
> schedule) to limit reimbursement to the provider or the insured where
> the policy did not expressly and unambiguously indicate Defendant's
> election to limit reimbursement in accordance with Florida Statute
> 627.736(5)(a)2 as its sole methodology for payment of No Fault
> claims.

3

The complaint seeks no monetary damages.  It seeks only a declaration that the form language Allstate used in the class members' PIP insurance policies did not clearly and unambiguously indicate that payments would be limited to the levels provided for in § 627.736(5)(a).

Allstate removed the case to federal court in August 2013, asserting that the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2), provided for federal subject matter jurisdiction over the lawsuit.  In support of its claim of federal jurisdiction, Allstate submitted an affidavit from Tara Watson, an Allstate employee personally familiar with PIP claim-related business records maintained by the company.  Watson attested that the putative class included over 100 healthcare providers and insureds who had submitted "1,655,733 bills for payment or reimbursement" of medical expenses based on PIP coverage under Allstate Florida auto policies during the relevant time period.  She calculated that Allstate had paid out $126,474,216.25 in benefits for those claims based on the fee schedule in § 627.736(5)(a).  She also calculated that if Allstate had not limited payment based on § 627.736(5)(a), then the putative class members would have been entitled to $194,651,033.94 in benefits (80% of the billed amounts).  Allstate maintained that the amount in controversy was the difference between those two figures — $68,176,817.69 — because that is the additional amount of benefits the

4

putative class members would be eligible to recover in the event that they received the declaratory judgment.

Wellness moved to remand the case to state court. It contended that Allstate had not established that the amount in controversy exceeds $5 million because the complaint did not seek damages but only a declaration that the language of the Allstate insurance policies did not clearly and unambiguously adopt the coverage caps of § 627.736(5)(a), as Florida law requires for them to be effective. While recognizing a declaration in its favor would entitle the class members to seek additional payment from Allstate, Wellness nevertheless argued that the financial effects of the declaratory judgment could not be considered for purposes of determining the amount in controversy because those effects were too speculative.

The district court granted the motion to remand. It agreed with Wellness that "the value of the declaratory relief [was] too speculative" for purposes of satisfying CAFA's amount-in-controversy requirement because Allstate had failed to show that "declaratory judgment in this case will necessarily trigger a flow of money to [the] plaintiffs." Allstate, of course, disagrees and contends that it met its burden of showing that the amount in controversy involving the declaratory judgment Wellness seeks exceeds $5 million.

II.

5

CAFA grants subject matter jurisdiction to federal district courts over class actions in which (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members.[1]  See 28 U.S.C. § 1332(d)(2), (5)–(6); see also 7A Charles Alan Wright et al., Federal Practice and Procedure § 1756.2 (3d ed. 2005).  Only the second of those three requirements is at issue in this appeal.

 "We review de novo the district court's decision to remand a case to state court for lack of subject matter jurisdiction."  Lowery v. Ala. Power Co., 483 F.3d 1184, 1193 (11th Cir. 2007).  Where the plaintiff has not alleged a specific amount of damages, the defendant seeking removal must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.  Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010).  A court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence, to determine whether the defendant has carried its burden.  Id. at 753–54.

What counts is the amount in controversy at the time of removal.  Id. at 751. It is less a prediction of "how much the plaintiffs are ultimately likely to recover," than it is an estimate of how much will be put at issue during the litigation; in other

---

[1] CAFA also contains several exceptions to this broad grant of jurisdiction, see 28 U.S.C. § 1332(d)(3)–(4), but those exceptions are not at issue in this case.

words, the amount is not discounted by the chance that the plaintiffs will lose on the merits.  Id. (quotation marks omitted); see also McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").  Potential developments, such as "[t]he possibility that the putative class will not be certified, or that some of the unnamed class members will opt out," are irrelevant to the jurisdictional analysis. Pretka, 608 F.3d at 772 (noting that the jurisdictional determination "is based only on the facts as they exist at the time of removal").

We have held that "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective." Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000) (quotation marks omitted).  Stated another way, the value of declaratory relief is "the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted." Id.  For CAFA purposes, we aggregate the claims of individual class members and consider the monetary value that would flow to the entire class if declaratory relief were granted. See 28 U.S.C. § 1332(d)(6); see also Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1122 (11th Cir. 2010); Pretka, 608 F.3d at 772.  While absolute certainty is neither attainable nor required, the value of declaratory or injunctive relief must be "sufficiently

measurable and certain" to satisfy the amount-in-controversy requirement. Morrison, 228 F.3d at 1269. That requirement is not satisfied if the value of the equitable relief is "too speculative and immeasurable." Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000) (quotation marks omitted); see also Leonard v. Enter. Rent a Car, 279 F.3d 967, 973 (11th Cir. 2002). It is a matter of degree.

In this case, Allstate has carried its burden of establishing an amount in controversy that exceeds $5 million. Wellness did not provide any evidence to rebut Allstate's Watson affidavit or to controvert its calculations. The affidavit establishes that the declaratory judgment Wellness seeks will determine whether Allstate made insufficient payments on more than 1.6 million "bills for payment or reimbursement," with the amount of the insufficiency exceeding $68 million, which it will owe the putative class members. That is the amount in controversy, see McPhail, 529 F.3d at 956, and it is far above the $5 million threshold set by CAFA.

In support of its position that the value of the declaratory relief in this case was too speculative, Wellness points to the multiple events that must occur before any putative class member could recover additional money from Allstate in the event that the declaratory judgment goes in favor of the class. Under Florida law, a party seeking to file a suit to recover PIP benefits must first submit a pre-suit

8

demand letter to the insurer for payment of benefits.  Fla. Stat. § 627.736(10)(a).  If the insurer rejects that demand for payment, the party may file suit and may be entitled to additional payment, but only if the relevant factfinder determines that the treatment in question was (1) related to an accident, (2) medically necessary, and (3) billed at a reasonable rate.  See id. § 627.736(4)(b)(6).

Wellness argues that with all of those contingencies standing between any class member and recovery, valuing a declaratory judgment is far too speculative. That speculation argument rests on two premises.  First, it relies on the assumption that class members armed with a declaratory judgment would not later seek out the additional payment they are owed.  That assumption is contrary to human nature and the nature of lawyers.  Second, the speculation argument asks us to believe without any basis for doing so that the vast majority of the 1,655,733 bills that were submitted to Allstate for PIP benefits were (1) unrelated to an accident, (2) not medically necessary, or (3) for treatments billed at an unreasonable rate.

Wellness' speculation argument is itself too speculative.  It requires indulging the kind of "conjecture, speculation, or star gazing" that we have found inappropriate in analyzing the amount in controversy.  See, e.g., Pretka, 608 F.3d at 754.  Although the putative class members might have to take an extra step or

two after obtaining declaratory relief to get money from Allstate,[2] that does not mean that determining that the amount in controversy exceeds $5 million is too speculative of a task.  Estimating the amount in controversy is not nuclear science; it does not demand decimal-point precision.  See id. ("The law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life.").  And the undertaking is not to be defeated by unrealistic assumptions that run counter to common sense.  Given the large number of medical bills at issue and the significant amount of money at stake, we find it unlikely that most insureds and medical care providers, who may be collectively owed $68,176,817.69, would leave the vast majority of that money on the table if a federal court declared that they were entitled to it.  See id.

There is another consideration.  The larger the calculated amount at stake, the easier it is to be confident that collection contingencies should not count for much.  Cf. Morrison, 228 F.3d at 1270–71 ("What is only merely possible with respect to one policyholder—a sum of future claims for diminished value with a present value of $75,000—becomes quite probable with respect to over a million policyholders.  With that many policies alleged to be in effect, we clearly cannot conclude to a legal certainty that the value of the injunction sought in this case, if

_____

[2] If the putative class obtained declaratory relief, Allstate might choose to simply pay the claimants the additional amount owed after determining that it was not worth the cost to litigate the reasonableness of charges on 1,655,733 different bills.  If that did not occur, however, the putative class members would have to request the additional payment from Allstate and wait for Allstate to deny the request before they could file suit.  See Fla. Stat. § 627.736(10)(a).

viewed in the aggregate, is too uncertain to satisfy the amount in controversy requirement."). The maximum difference in the amount of payments that rides on the outcome of the declaratory judgment is in excess of $68 million, which is more than thirteen times the $5 million amount-in-controversy threshold. Even if we speculated that 90% of that amount would be siphoned off by one contingency or another — an extraordinarily unlikely outcome — more than $6.8 million would still be at stake.

Wellness' reliance on our Leonard decision is misplaced because the facts in that case are distinguishable from those in this case. The plaintiffs in Leonard sought, among other things, an injunction to stop the defendant from selling automobile insurance when it rented cars to customers. See 279 F.3d at 970, 973. We held that the requested injunctive relief had no value because the plaintiffs had "always been free to refuse to purchase the insurance offered by the defendants." Id. at 973. We could not assign a monetary value to the injunctive relief because we would have to speculate as to how many future customers might purchase the optional insurance absent an injunction. See id.

While the issue in Leonard concerned future transactions that were merely possible, the issue here concerns past transactions that actually did occur. The calculations in the Watson affidavit were based on medical treatment that putative class members had already received and actual bills that had already been incurred.

11

Unlike in Leonard, where the plaintiffs could not identify how many future sales might be affected if we granted injunctive relief, here Allstate is able to identify a specific number of bills that would be affected by the declaratory relief sought, as well as a concrete monetary value that the plaintiffs may be eligible to recover if they obtain relief.  Because Watson's calculations were based on actual transactions that took place and concrete amounts that were billed, the $68,176,817.69 figure she calculated is not a number "divined by looking to the stars."  See Lowery, 483 F.3d at 1215.

Although members of the putative class might not ultimately recover the full $68,176,817.69, that possibility does not shut the door on federal jurisdiction.  As we have said before, "the pertinent question [at the jurisdictional stage] is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover."  Pretka, 608 F.3d at 751; see also McPhail, 529 F.3d at 956 ("The amount in controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.").  Here, the amount that will be put at issue is the amount that the putative class members may be eligible to recover from Allstate in the event that they obtain declaratory relief.[3]  That $68,176,817.69 figure exceeds CAFA's

---

[3] Wellness claims that the class members do not stand to gain anything of monetary value from a declaratory judgment.  We disagree.  A declaratory judgment would establish that Allstate provided members of the putative class with insufficient payment on bills that have already been

12

amount-in-controversy threshold, and thus the district court erred in concluding that the threshold was not met.

For these reasons, we reverse the district court's order remanding the case to state court and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.

---

incurred, and it would give those class members a right to receive additional payment.  That right to additional payment represents "the monetary value of the benefit that would flow to the plaintiff if the [declaratory relief] were granted."  See Morrison, 228 F.3d at 1268.