A09A0407. KEYINGHAM INVESTMENTS, LLC et al. v. FIDELITY NATIONAL TITLE INSURANCE COMPANY.
(680 SE2d 442)

BLACKBURN, Presiding Judge.

In this breach of contract action, Keyingham Investments, LLC and Peter St. Martin (d/b/a Real Estate Solutions Providers, Inc.) appeal from the trial court's order granting summary judgment to Fidelity National Title Insurance Company and denying summary

---

[13] See *Stobbart*, supra.
[14] *Johnson*, supra.
[15] See *Harridge v. State*, 243 Ga. App. 658, 664 (6) (534 SE2d 113) (2000).

YALE LAW LIBRARY

judgment to them. Keyingham and Martin argue that the plain language of the title commitment contract required Fidelity to issue a title insurance policy that covered their losses caused by a forgery at closing. We agree and reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

The undisputed facts show that Thoughtforce International, Inc., Sam Dobrow, and Real Estate Solutions Providers, Inc. (the "lenders") agreed to loan $106,000 to a man they thought was Michael Shanahan. In exchange, they were to receive a security deed conveying a security interest in the subject real property, in which the real Michael Shanahan had an ownership interest. Prior to closing, the lenders received a commitment from Fidelity to insure the subject property against defects in the title upon the satisfaction of certain conditions. The commitment was executed on behalf of Fidelity by its agent closing lawyers. The commitment conditions included the following:

> Documents satisfactory to the Company creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded:
>
>> a) Execution, recording and delivery of a Security Deed in the original amount of 106000, in favor of THOUGHTFORCE INT, INC, 34%, SAM DOBROW 16%, REAL ESTATE SOL. PRO. INC. 50%, to secure subject property.[2]

Pursuant to this commitment, the law firm acting as Fidelity's agent prepared the closing documents for the $106,000 loan transaction, including the security deed. At the closing on May 12, 2004, the law firm checked the identity of the man who claimed to be Michael Shanahan and, satisfied with the identity documents produced, including a driver's license with photo, proceeded with the closing. Unbeknownst to either the law firm or the lenders, this man in fact was not Shanahan but was an imposter with false identification papers. After the documents were executed and reviewed, the

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[2] It is undisputed that all parties knew that Real Estate Solutions Providers, Inc. was not a corporate entity but was merely a trade name for Martin under which he did business.

law firm disbursed the funds from the closing, including payment to Fidelity of the insurance premium for the title policy to be issued under the commitment. The law firm then forwarded the executed security deed to the county clerk for recordation in the county's property files. The recordation took place on June 1, 2004, and the recorded deed was returned to the law firm.

The loan then went into default, and the parties, including the law firm as agent for Fidelity, learned of the fraud perpetrated at the closing. At Fidelity's express instruction, the law firm refused to issue the title policy referenced in the title commitment. The lenders made a claim under the commitment agreement in September 2004, which Fidelity denied. On June 2, 2005, two of the lenders (Thought-force and Dobrow) assigned to Keyingham their interests in the promissory note, in the security deed, and in the claim against Fidelity.

On June 6, 2005, Keyingham and Martin d/b/a Real Estate Solutions Providers, Inc. sued Fidelity for breach of contract and other claims, seeking to recover the $106,000 (plus interest) lost in the transaction. Plaintiffs moved for partial summary judgment for liability on the breach of contract claim, arguing that Fidelity was liable as a matter of law for its failure to issue the policy as promised in the title commitment. Fidelity cross-moved for summary judgment in its favor on the same claim, arguing that the conditions set forth in the title commitment were not met when the forgery was discovered before the policy issued, and also that the plaintiffs lacked standing to bring this claim. Concluding that the forgery meant that the conditions of the title commitment were not met, the trial court entered partial summary judgment in favor of Fidelity and against the lenders on the breach of contract claim (concomitantly denying plaintiffs' motion for summary judgment on the same claim), which judgment the lenders appeal.

1. The parties agree that this appeal rises and falls on whether the conditions set forth in the title commitment (also known as a binder) were met. If they were met, then according to Fidelity's own agent attorney, the promised "long form"[3] policy should have issued that would have covered the forgery in this case.[4] If they were not met, then Fidelity was not so obligated and therefore would not have been liable for its refusal to issue the policy.

---

[3] "Long form" policies are issued after the recorded deed is received back from the county clerk, as opposed to "short form" policies that are issued at the real estate closing.

[4] When asked "[i]f the long form policy had been issued before this fraud was discovered, do you have an opinion about whether that policy would have covered this claim?", Fidelity's agent attorney answered: "[T]he answer is, that if assuming there was no knowledge of the forgery and the policy had been issued, Fidelity would have been bound to pay."

The key condition at issue required that "[d]ocuments satisfactory to the Company creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded." Fidelity argues that the modifying phrase "creating the interest in the land and/or mortgage to be insured" meant that a forged document, which would neither pass nor create any interest in the land, would prevent this condition from being fulfilled. We disagree.

"An insurance contract that is clear and unambiguous must be enforced by the court as made. The binder in this case is unambiguous." (Citation and punctuation omitted.) *Glass v. Stewart Title Guaranty Co.*[5] The plain meaning of the binder condition here was that documents, which were satisfactory to Fidelity, and whose language created the interest in the land or mortgage to be insured, had to be signed, delivered, and recorded. In other words, the question to be resolved in applying the commitment's conditions was did the language or form of the executed documents here, satisfy Fidelity's agent. It is not whether those accepted documents, in fact, created the insured's interest in the property as was held by the trial court. The entire purpose of title insurance is to protect the insured against defects, including fraud or forgeries, in the chain of title. The protection for the insurer in this process is in the review and acceptance of the documents by the insurer's agent prior to any liability attaching under the binder. Here, the documents were accepted, delivered, and recorded to the satisfaction of Fidelity through its agents.

The security deed was drafted by Fidelity's agent law firm to Fidelity's satisfaction. This deed was then signed, delivered, and recorded, all under the supervision of Fidelity's agent and to its satisfaction. See OCGA § 10-6-51 (principal is bound by agent's acts within the scope of his authority). The commitment's conditions were undisputedly fulfilled to the satisfaction of Fidelity, who cannot now complain that such documents failed to satisfy its requirements.

Significantly, unlike the title commitment in *Glass*, supra, 181 Ga. App. at 805 (1), the title commitment here did not require that the documents or the security deed had to be executed by a particular person, but only that they had to be executed to the satisfaction of Fidelity's agents. Thus, in *Glass*, when the title commitment required that the deed be signed by Sherrill Y. Wilson, the forged signing of that deed by another person did not fulfill the requirements of the condition. Id. See *Rentrite, Inc. v. Sentry Select Ins. Co.*[6] ("[i]n short, the foregoing . . . language does not impose the coverage

---

[5] *Glass v. Stewart Title Guaranty Co.*, 181 Ga. App. 804, 806 (1) (354 SE2d 187) (1987).
[6] *Rentrite, Inc. v. Sentry Select Ins. Co.*, 293 Ga. App. 643, 647 (1) (667 SE2d 888) (2008).

requirements found by the trial court and we cannot create such requirements through interpretation"). Here, the condition at issue did not require that the described documents had to be executed by a named individual; the commitment contract did not specify *who* had to execute those documents, only that they be acceptable to Fidelity's agents, which they were. Thus, the condition was fulfilled when Fidelity's agents reviewed, approved and accepted the closing documents and recorded them. Fidelity then became obligated to issue the promised title policy, and is thus liable to its insured under the commitment agreement as though it had in fact issued the policy.

Fidelity maintains that absent receipt of a valid interest in the land, the three lenders could not receive title insurance on that land. This argument, however, ignores *that one of the very purposes of title insurance is to protect a party from the consequences of forgery in the chain of title*, which necessarily results in the party not receiving an interest in the land. See 16 Powell on Real Property § 92.04 [3] (2008) ("certain risks, referred to as 'off-record' risks, because they are not usually discernable from an inspection of the public record, are considered to be insured by the title insurance policy. They include forgery . . ."); Pindar, American Real Estate Law § 27-11 (1976) (title insurance claims based on forgery "will produce a total policy loss when they occur"). See, e.g., *Wolff v. Commercial Standard Ins. Co.*[7] (insurer readily paid forgery loss); *Zions First Nat. Bank v. Nat. American Title Ins. Co.*[8] ("[b]ecause title insurance is in the nature of a warranty, forgery is one of the defects that title insurance is intended to cover") (citation omitted). The following cases ruled that the title insurance company had to cover losses caused by forgery. See *Lawyers Title Ins. Corp. v. First Fed. Sav. Bank & Trust*[9] ("[i]t is ironic that in its promotional materials, Lawyers Title repeatedly represents to prospective customers that a primary purpose of title insurance is specifically to protect buyers from the risks of forged instruments"); *The Coast Mut. Bldg.-Loan Assn. v. Security Title Ins. & Guarantee Co.*;[10] *Parker v. Title & Trust Co. of Fla.*;[11] *Greenpoint Mtg. Funding v. Stewart Title Ins. Co.*[12]

Analogously, *Black v. Pioneer Nat. Title Ins. Co.*[13] held that a title

---

[7] *Wolff v. Commercial Standard Ins. Co.*, 345 SW2d 565, 569 (Tex. Civ. App. 1961).

[8] *Zions First Nat. Bank v. Nat. American Title Ins. Co.*, 749 P2d 651, 653 (Utah 1988).

[9] *Lawyers Title Ins. Corp. v. First Fed. Sav. Bank & Trust*, 744 FSupp. 778, 786 (IV) (A), n. 7 (E.D. Mich. 1990).

[10] *The Coast Mut. Bldg.-Loan Assn. v. Security Title Ins. & Guarantee Co.*, 57 P2d 1392, 1394 (3) (Cal. App. 1936).

[11] *Parker v. Title & Trust Co. of Fla.*, 429 S2d 1267, 1269 (Fla. Dist. Ct. App. 1983).

[12] *Greenpoint Mtg. Funding v. Stewart Title Ins. Co.*, 824 NYS2d 768 (N.Y. 2006).

[13] *Black v. Pioneer Nat. Title Ins. Co.*, 138 Ga. App. 138, 139-140 (1) (225 SE2d 689) (1976).

insurance policy protected the purchasing landowners when they did not receive fee simple title to the middle portion of the tract they purchased, as it was discovered that a third party (not the seller) actually owned that portion in fee simple. Thus, although the insured parties received no interest whatsoever in this middle portion owned by a third party, the insured parties were able to recover under the title insurance policy that insured their interests in the deed that claimed to give them a fee simple title to this middle portion. Id.

Because the plain language of the title commitment condition was fulfilled, the trial court erred (i) in failing to award partial summary judgment to the plaintiffs on the question of liability under the breach of contract claim and (ii) in awarding partial summary judgment to Fidelity on this claim.

2. Fidelity argues that Keyingham and Martin lack standing to bring this claim since neither of them was named as a proposed insured in the title commitment contract; the title commitment referred only to Real Estate Solutions Providers, Inc., Thoughtforce, and Dobrow. However, this argument ignores (i) the undisputed and known fact that Real Estate Solutions Providers, Inc. was a trade name for Martin, under which he did business, and (ii) the assignment by Thoughtforce and Dobrow, which assigned all their interests in the deed, note, and title insurance claim to Keyingham. Fidelity's contention that the binder required the lenders to notify Fidelity of any such assignment is irrelevant in that the assignment took place several months *after* Fidelity had already refused to issue the policy to the original parties and had already denied their claim. The proper parties were before the trial court.

*Judgment reversed. Miller, C. J., and Adams, J., concur.*

DECIDED JUNE 1, 2009 —
RECONSIDERATION DENIED JUNE 23, 2009 —

*Pendergast & Jones, Ezra B. Jones*, for appellants.
*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider, David J. Reed, James B. McClung*, for appellee.