S09G1783. FIDELITY NATIONAL TITLE INSURANCE COMPANY v. KEYINGHAM INVESTMENTS, LLC et al.

(702 SE2d 851)

NAHMIAS, Justice.

We granted certiorari in this case to consider whether a condition of a title insurance commitment was satisfied when the borrower who executed a security deed, it is later discovered, was an imposter who forged the true owner's name on the deed. The Court of Appeals held that the condition was satisfied, see *Keyingham Investments v. Fidelity Nat. Title Ins. Co.*, 298 Ga. App. 467 (680 SE2d 442) (2009), and we affirm.

1. The Court of Appeals's opinion contains a detailed account of the facts, see *Keyingham*, 298 Ga. App. at 468-469, and they will only

be reiterated here as necessary. The title commitment condition at issue was as follows:

> Documents satisfactory to the Company creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded:
> a) Execution, recording and delivery of a Security Deed in the original amount of [$]106000, in favor of [the lenders], to secure subject property.

Relying on *Glass v. Stewart Title Guaranty Co.*, 181 Ga. App. 804 (354 SE2d 187) (1987), Fidelity National Title Insurance Company ("Fidelity") contends that a forged deed is void ab initio and does not create an interest in the property and that, without such an interest, no title insurance can issue. *Glass* stated this proposition but cited only cases addressing whether someone who unknowingly buys property based on a forgery holds superior title to the true owner, not cases addressing whether title insurance purchased by the unknowing buyer covers the risk of a forgery. See id. at 805.

As properly recognized by the Court of Appeals in this case, Fidelity's argument "ignores that one of the very purposes of title insurance is to protect a party from the consequences of forgery in the chain of title, which necessarily results in the party not receiving an interest in the land." *Keyingham*, 298 Ga. App. at 471 (citing numerous authorities) (emphasis omitted). See also *FTC v. Ticor Title Ins. Co.*, 504 U. S. 621, 626 (112 SC 2169, 119 LE2d 410) (1992) (explaining that title insurance protects an insured from "losses resulting from title defects not discoverable from a search of the public records, such as forgery, missing heirs, previous marriages, impersonation, or confusion in names"); Michael Braunstein, *Structural Change and Inter-Professional Competitive Advantage: An Example Drawn From Residential Real Estate Conveyancing*, 62 Mo. L. Rev. 241, 248 (1996) ("[T]itle insurance provides coverage against hidden risks. Thus, title insurance protects the purchaser against such defects as a forged, stolen or undelivered deed.").

Title insurance protects against "defective titles," OCGA § 33-7-8, and a forged deed conveys a defective title, see *Brock v. Yale Mortgage Corp.*, 287 Ga. 849, 852 (700 SE2d 583) (2010) ("[E]ven a bona fide purchaser for value without notice of a forgery cannot acquire good title from a grantee in a forged deed . . . , because the grantee has no title to convey."). Exclusions from coverage are to be strictly construed, and " '[i]t is the understanding of the average policyholder which is to be accepted as a court's guide to the meaning of words, with the help of the established rule that ambiguities and uncertainties are to be resolved against the insurance company.' "

*Cunningham v. Middle Ga. Mut. Ins. Co.*, 268 Ga. App. 181, 185 (601 SE2d 382) (2004). We therefore conclude that, in the absence of language in a title insurance commitment that plainly excludes coverage for a forgery, a commitment must be construed to provide coverage for forgeries. *Glass* is disapproved to the extent it stands for the contrary proposition.

2. Fidelity also contends that the condition that "[d]ocuments satisfactory to the Company creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded" is plain and specific enough to exclude coverage for forgeries, because the condition requires that the documents must create an interest in land. Again, we disagree. First, as explained by the Court of Appeals, this phrase can be read as requiring that the "documents" that purport to create the insured interest, here the security deed, be satisfactory to Fidelity, not that they actually create an unassailable interest in the land. See *Keyingham*, 298 Ga. App. at 470. Indeed, the phrase is nonsensical if interpreted to mean that a perfected interest in the land must be created by the deed alone, which could not create such an interest before it is "signed" and "delivered."

Moreover, the phrase should be read not in isolation but in the context of the title insurance commitment as a whole. See *Cunningham*, 268 Ga. App. at 185. Immediately following the phrase on which Fidelity relies is the phrase "Execution, recording and delivery of a Security Deed in the original amount of [$]106000, in favor of [the lenders]." An insured could reasonably read the latter phrase as setting forth the specific document that had to be signed, recorded, and delivered to obtain the title insurance, and that phrase did not specify that the security deed had to create a perfected interest in the property. Indeed, as discussed above, title insurance is fundamentally designed to protect against title defects, and a forged deed creates such a defect. These provisions could lead the average policyholder to conclude that, if a security deed between the lenders and the borrower was executed, recorded, and delivered in a form satisfactory to Fidelity and its agent — and, here, Fidelity's closing attorney verified, accepted, and recorded the security deed — the commitment would cover forgeries.

For these reasons, the phrase on which Fidelity relies did not require that the security deed in this case create a perfected interest in the property in order to obtain coverage.

3. Accordingly, we conclude that the Court of Appeals properly ruled that Fidelity was required to issue the title insurance policy in question.

*Judgment affirmed. All the Justices concur.*

*Weissman, Nowack, Curry & Wilco, Jeffrey H. Schneider, James B. McClung,* for appellants.

*Pendergast & Jones, Ezra B. Jones III, David J. Reed,* for appellees.