**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 11, 2012**

# In the Court of Appeals of Georgia

A12A0219.  MURPHY  v.  TICOR  TITLE  INSURANCE
COMPANY.

MIKELL, Presiding Judge.

Thomas L. Murphy appeals from the trial court's dismissal for failure to state a claim of his complaint for breach of a contract of title insurance issued by Ticor Title Insurance Company (Ticor) and the denial of his motion for summary judgment on the issue of coverage. Finding no error, we affirm.

On appeal from a grant or denial of a motion for summary judgment, this court conducts a de novo review of the record, construing the evidence and all reasonable inferences therefrom in favor of the non-movant.[1] Also, "[w]e review the trial court's

---

[1] *Johnson v. E. A. Mann & Co.*, 273 Ga. App. 716, 717 (616 SE2d 98) (2005).

ruling on a motion to dismiss under the de novo standard of review."[2] Here, the trial court's order reflects that it considered affidavits filed after the original pleadings in making its determination. Therefore, Ticor's motion to dismiss was converted into a motion for summary judgment pursuant to OCGA § 9-11-56 and we apply that standard of review.

The following facts are not disputed. On January 21, 1987, Murphy and his father, Carl L. Murphy, purchased 85 acres of land in Franklin County.[3] In addition to the description of the real property, the deed included this statement: "*ALSO CONVEYED*: Right-of-way and easement for ingress and egress over the road presently existing." The Murphys's property abutted Lake Side Acres subdivision and the "road presently existing" was a 60 foot wide right-of-way designated Lakeview Lane which ended at the Murphys's property line and provided access to their property. An unpaved dirt road began at the property line (at the end of Lakeview Lane) and continued across the Murphy property. Ticor issued a Title Insurance Policy on the property and the Murphys paid the premium for the insurance.

---

[2] (Citation and punctuation omitted.) *Welch v. Ga. Dept. of Transp.*, 276 Ga. App. 664 (624 SE2d 177) (2005).

[3] Carl Murphy deeded his interest in the property to appellant prior to initiation of the current litigation.

The printed first page of the policy provides that

[s]ubject to the exclusions from coverage, the exceptions contained in schedule B and the provisions of the conditions and stipulations hereof, Ticor . . . insures, *as of date of policy shown in schedule A, [January 28, 1987]* against loss or damage . . . by reason of: . . . (3) [l]ack of a right of access to and from the land; or (4) [u]nmarketability of title." (Emphasis supplied.)

The printed Schedule of Exclusions from Coverage states that "[t]he following matters are expressly excluded from the coverage of this policy: . . . (3) [d]efects, liens, encumbrances, adverse claims, or other matters . . . (d) *attaching or created subsequent to Date of Policy*[.]" (Emphasis supplied.)

Section 1, Definition of Terms, in the Conditions and Stipulations states that:

The following terms when used in this policy mean: . . . (d) "land": the land described, specifically or by reference in Schedule A and improvements affixed thereto which by law constitute real property; provided, however, the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

3

Schedule A, attached to the title insurance policy, the substantive contents of which are typed into a form, also reflects that the land referred to in the policy includes "ALSO CONVEYED: Right-of-way and easement for ingress and egress over the road presently existing."

In 2007, a neighbor on Lakeview Lane, who is not a party to this action, blocked Murphy's access to his property be putting up posts, a gate, chains and locks across Lakeview Lane. Murphy notified Ticor's agent and wrote a letter to the landowner, who removed the obstruction. In June, 2009, Murphy again found his access fully obstructed by the same neighbor's posts, gates, chains and locks. Murphy again notified Ticor of the loss of his right of access and made a claim for the reduction in the property's marketability and market value in excess of $50,000. Ticor, by letter of November 12, 2009, denied Murphy's claim because the neighbor's actions occurred after January 28, 1987, the date of purchase.

1. Murphy's first enumeration of error is that the trial court failed to apply rules of construction applicable to insurance contracts in making its determination. The second enumeration is that the trial court did not address ambiguities in the contract and construe them in favor of Murphy. They are addressed together.

4

Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy. Thus, a carrier may agree to insure against certain risks while declining to insure against others. In construing an insurance policy, we begin, as with any contract, with the text of the contract itself.[4]

One of the most well-established rules of contract construction is that the contract must be construed as a whole, "and the whole contract should be looked to in arriving at the construction of any part."[5]

"As with any insurance policy, we construe the policy exclusions most strongly against the insurer and in favor of providing the indemnity sought. The policy's terms are also construed as reasonably understood by an insured."[6] "In construing an

---

[4] (Footnotes omitted.) *Reed v. Auto-Owners Ins. Co.*, 284 Ga. 286, 287 (2) (667 SE2d 90) (2008).

[5] OCGA § 13-2-2 (4). *Fix v. McAllister*, 273 Ga. App. 463, 467 (1) (615 SE2d 547) (2005).

[6] (Punctuation and footnotes omitted.) *Fidelity Nat. Title Ins. Co. v. Matrix Financial Svcs. Corp.*, 255 Ga. App. 874, 878 (1) (b) (567 SE2d 96) (2002). See also *Fidelity Nat. Title Ins. Co. v. Keyingham Investments, LLC*, 288 Ga. 312, 313 (1) (702 SE2d 851) (2010).

insurance policy, the test is not what the insurer intended the words to mean, but what a reasonable person in the position of the insured would understand them to mean."[7]

> [W]hen faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous. A policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction. Where a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term will be strictly construed against the insurer as the drafter and in favor of the insured.[8]

As noted by the trial court, "[a] policy of title insurance has been defined as the opinion of the insurer concerning the validity of title, backed by an agreement to

---

[7] (Footnotes omitted.) *Harkins v. Progressive Gulf Ins. Co.*, 262 Ga. App. 559, 560 (586 SE2d 1) (2003). See, e.g., *Barrett v. Nat. Union Fire Ins. Co. &c.*, 304 Ga. App. 314, 320 (1) (696 SE2d 326) (2010).

[8] (Citations and punctuation omitted.) *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, ___ Ga. App. ___ (1) (Case No. A11A1849, decided February 14, 2012).

6

make that opinion good if it should prove to be mistaken and a loss should result in consequence."[9] In other words, "[t]itle insurance protects against 'defective titles."[10]

There is no allegation that, in 1987, there were any defects in the title conveyed to the Murphys and insured by Ticor as of that date.[11] The events affecting Murphy's use of the easement did not occur until 2007 and 2009. Therefore, we agree with the trial court that these later events diminishing his property value occurred "subsequent to Date of Policy" and are excluded from coverage by the terms of the policy. We find, as did the trial court, that "[t]he policy is clear and unambiguous"[12] on this point.

2. Based on our discussion in Division 1, we find Murphy's remaining three enumerations of error without merit.

*Judgment affirmed. Miller and Blackwell, JJ., concur.*

---

[9] (Citations and punctuation omitted.) *Green v. Sams*, 209 Ga. App. 491, 497 (1) (433 SE2d 678) (1993). See also OCGA § 33-7-8 (Title insurance is written "only upon evidence or opinion of title obtained and preserved by the insurer.").

[10] *Fidelity Nat. Title Ins. Co.*, supra.

[11] We also note that there is no evidence to show that Murphy does not still have the legal right to use the easement, only that a neighbor is interfering with it.

[12] *White v. Lawyers Title Ins. Co.*, 197 Ga. App. 780, 783 (4) (399 SE2d 526) (1990).