[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-13482

_____

VANESSA ANDERSON,
individually and on behalf of a class of similarly situated persons,

Plaintiff-Appellant,

*versus*

WILCO LIFE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:19-cv-00008-JRH-BKE

_____

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

BRANCH, Circuit Judge:

Vanessa Anderson is the lead plaintiff in this putative class action against her life insurance provider, Wilco Life Insurance Company.  She alleges that from 2011 to 2016, the company breached the terms of her universal life insurance policy by increasing her monthly rate for impermissible reasons.  Her policy provides for a "guaranteed maximum monthly cost of insurance rate" ("guaranteed monthly rate"), which represents the maximum rate Anderson can be charged in any given month, and a "current monthly cost of insurance rate" ("current monthly rate"), which represents the actual rate Anderson is charged.  The guaranteed monthly rate is calculated "based on" Anderson's "age, sex, and premium class."  The current monthly rate, by contrast, "will be determined by the Company" but cannot exceed the guaranteed monthly rate.

As a typical universal life insurance policy, Anderson's policy was a hybrid investment vehicle and life insurance policy.  As her policy aged, Wilco began to increase Anderson's current monthly rate sharply.[1]    Accordingly,  her  policy's  accumulation  value

---

[1] As explained below, Anderson argues that Wilco breached her policy by improperly calculating her current monthly rate.  She does not argue, however, that these increased rates exceeded the maximum rate permitted by the guaranteed monthly rate.

20-13482                Opinion of the Court                3

(essentially the investment earnings from which Anderson could cover her monthly payments) was wiped out, and Anderson failed to make the monthly payments out-of-pocket. Her policy lapsed, and Anderson sued. The district court dismissed her complaint, finding that the "only . . . reasonable reading of the policy" was that it gave Wilco discretion to set Anderson's current monthly rate (as long as that rate was less than the guaranteed monthly rate). Anderson appealed.

Presumably seeking to have her policy reinstated—although the exact parameters of the relief she seeks are far from clear—Anderson argues on appeal that her policy is ambiguous and that it should be construed in her favor. Anderson suggests that, so construed, the policy required Wilco to base her current monthly rate exclusively on her age, sex, and premium class (*i.e.*, the factors associated with the guaranteed monthly rate).[2] Wilco disagrees. Citing the policy language stating that the current monthly rate "will be determined by the Company," Wilco argues that the policy gives it discretion to set Anderson's current monthly rate, so long as it does not exceed the guaranteed maximum rate.

Our task in this appeal is to decide whether, as Wilco suggests, these provisions grant Wilco discretion to set the current

---

[2] As discussed below, it is unclear how this reading of the policy would benefit Anderson. Wilco concedes that it could not increase the current monthly rate above the guaranteed monthly rate, which is calculated based on age, sex, and premium class—the exact same factors upon which Anderson wants Wilco to calculate her current monthly rate.

4                    Opinion of the Court                    20-13482

monthly rate (as long as it does not exceed the guaranteed monthly rate), or if, instead, Wilco breached its contract with Anderson because it was required to base the rate on Anderson's sex, attained age, and premium class.   After careful review and with the benefit of oral argument, we agree with the district court that the policy unambiguously gave Wilco discretion to set Anderson's current monthly rate.  Accordingly, we affirm.

## I.    Background

### A.  Factual Background

In 2001, Vanessa Anderson purchased a universal life insurance policy from Wilco Life Insurance Company.[3]   As we explained in *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 920–21 (11th Cir. 2019) ("*Anderson I*"), "[u]niversal life insurance policies are hybrid products that combine elements of life insurance with a long-term investment savings component using market-based yields."  We described the features of Anderson's specific policy as follows:

> [Anderson's] premiums are deposited into a savings account, from which Wilco deducts certain monthly expenses to pay for the life insurance portion of the plan.  The monthly deduction is comprised of

---

[3] At the time Anderson purchased her policy, Wilco was doing business under the name "Conseco Life Insurance Company."  Conseco changed its name to Wilco in 2015.  For clarity we use the name "Wilco" in this opinion.

two elements: a cost of insurance ("COI") charge and a nominal monthly expense charge. . . .

The money held in the savings account is called the policy's "accumulation value," and earns interest at a guaranteed rate. For policies like Anderson's, defendant Wilco promised to credit interest on the policyholder's accumulation value at a guaranteed rate of 3% annually. The policyholder, like Anderson, has the option of paying her monthly premiums from external funds or from the policy's accumulation value. If a policy's accumulation value is insufficient to cover a monthly premium deduction, the policy enters a grace period during which the policyholder must pay a premium sufficient to cover the deduction. If the policyholder does not, the policy will lapse.

Id. at 921.

Starting with the 2011–2012 policy year, Wilco began to increase the cost of Anderson's policy sharply.[4] Due to the

---

[4] For example, according to Anderson's complaint, Wilco increased her annual cost of insurance from $397.70 for the 2010–2011 policy year to $578.54 for 2011–2012, a 45.47% increase. And between the 2013–2014 and 2014–2015 policy years, the annual cost of insurance payment went from $563.10 to $695.31, a 23.48% increase.

And, as noted above, Anderson does not argue that these rates exceeded the guaranteed monthly rate. As explained in more detail below, she alleges only that Wilco failed to properly calculate the current monthly rate.

increased rates, the policy's accumulation value quickly depleted, and Anderson failed to cover the monthly cost of insurance out of pocket. Consequently, her policy lapsed in 2017.

The core of the dispute on appeal is the proper interpretation of the policy terms governing Anderson's current monthly rate and whether Wilco's increases violated those terms.

There are three relevant policy provisions. The first is a caption beneath the "Table of Guaranteed Monthly Cost of Insurance Rates" on the "Policy Data Page" (the "Policy Data Page caption"). As seen below, the Policy Data Page presents a table of guaranteed, maximum monthly rates and states that the "actual monthly cost of insurance rates will be determined by the company based on the policy cost factors described in your policy" but would never be "greater than those shown above [in the Table of Guaranteed Monthly Rates].

POLICY DATA PAGE
TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES
PER $1,000

| ATTAINED AGE | POLICY YEAR | RATE | ATTAINED AGE | POLICY YEAR | RATE |
|---|---|---|---|---|---|
| 42 | 01 | .07010 | 71 | 30 | 2 05420 |
| 43 | 02 | .08300 | 72 | 31 | 2.29830 |
| 44 | 03 | .09680 | 73 | 32 | 2.59080 |
| 45 | 04 | .11180 | 74 | 33 | 2 92750 |
| 46 | 05 | .12640 | 75 | 34 | 3.30330 |
| 47 | 06 | .29420 | 76 | 35 | 3.71000 |
| 48 | 07 | .31420 | 77 | 36 | 4.14580 |
| 49 | 08 | .33670 | 78 | 37 | 4.61750 |
| 50 | 09 | .36170 | 79 | 38 | 5.14000 |
| 51 | 10 | .38920 | 80 | 39 | 5 73420 |
| 52 | 11 | .42080 | 81 | 40 | 6.41750 |
| 53 | 12 | .45580 | 82 | 41 | 7.20500 |
| 54 | 13 | .49170 | 83 | 42 | 8.09330 |
| 55 | 14 | .53000 | 84 | 43 | 9 07250 |
| 56 | 15 | .56830 | 85 | 44 | 10.13170 |
| 57 | 16 | .60580 | 86 | 45 | 11 26330 |
| 58 | 17 | .64330 | 87 | 46 | 12.46580 |
| 59 | 18 | .68580 | 88 | 47 | 13.74000 |
| 60 | 19 | .73580 | 89 | 48 | 15.09580 |
| 61 | 20 | .79750 | 90 | 49 | 16.54420 |
| 62 | 21 | .87420 | 91 | 50 | 18.11830 |
| 63 | 22 | .96830 | 92 | 51 | 19.87750 |
| 64 | 23 | 1.07420 | 93 | 52 | 21.94580 |
| 65 | 24 | 1 18830 | 94 | 53 | 24 60250 |
| 66 | 25 | 1.30670 | 95 | 54 | 28.41830 |
| 67 | 26 | 1 42750 | 96 | 55 | 34 49000 |
| 68 | 27 | 1.55250 | 97 | 56 | 44.77000 |
| 69 | 28 | 1.69170 | 98 | 57 | 61 99670 |
| 70 | 29 | 1.85500 | 99 | 58 | 83.33330 |

THE COST OF INSURANCE RATES SHOWN ABOVE ARE BASED ON THE COMMISSIONER'S 1980 STANDARD ORDINARY MALE MORTALITY TABLE, AGE LAST BIRTHDAY.   ACTUAL MONTHLY COST OF INSURANCE RATES WILL BE DETERMINED BY THE COMPANY BASED ON THE POLICY COST FACTORS DESCRIBED IN YOUR POLICY. HOWEVER, THE ACTUAL COST OF INSURANCE RATES WILL NOT BE GREATER THAN THOSE SHOWN ABOVE.

The second relevant policy term is the "Cost of Insurance" provision, which provides a formula that Wilco must use to calculate Anderson's monthly cost of insurance. That provision is reproduced below:

**COST OF INSURANCE**
The monthly cost of insurance for the policy is calculated as (a) multiplied by the result of (b) minus (c) where:

    a. Monthly cost of insurance rate as described in the Cost of Insurance Rates section;
    b. Insured's death benefit at the beginning of the policy month divided by 1.0024663;
    c. Accumulation Value at the beginning of the the policy month.

Divide the result by $1,000.

The monthly cost of insurance for any optional benefits specified in a rider is shown in the Cost of Insurance Schedule section of a Policy Data Page.

And third, the "Cost of Insurance Rates" provision, which is cross-referenced in the cost formula, explains how the guaranteed and current monthly rates are calculated:

**COST OF INSURANCE RATES**
The guaranteed monthly cost of insurance rates for the policy are based on the insured's sex, attained age and premium class on the date of issue. Attained age means age on the prior policy anniversary except when this policy is issued when it means age last birthday prior to policy date. These rates are shown on a Policy Data Page.

Current monthly cost of insurance rates will be determined by the Company. The current monthly cost of insurance rates will not be greater than the guaranteed monthly cost of insurance rates which are listed on a Policy Data Page.

As seen above, the guaranteed monthly rate is "based on the insured's sex, attained age and premium class on the date of issue." And the current monthly rate "will be determined by the Company."

## B. Procedural History

Anderson filed the underlying putative class action in state court, alleging a breach of contract. She claimed that the increases to her current monthly rate violated the insurance policy because Wilco did not base them on the "policy cost factors," namely sex,

20-13482                Opinion of the Court                9

age, and premium class status, which are listed in the guaranteed monthly rate provision.[5]

Wilco timely removed the action to the United States District Court for the Southern District of Georgia, alleging diversity jurisdiction and subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"). The district court remanded the case to state court for lack of subject-matter jurisdiction because it found that Wilco had not shown that the amount-in-controversy exceeded $5 million, per CAFA's requirements. On appeal, we reversed and vacated the remand order, holding that there was subject-matter jurisdiction under CAFA because the amount in controversy did, in fact, exceed $5 million. *Anderson I,* 943 F.3d at 925–27.

Wilco then filed a motion to dismiss for failure to state a claim, arguing that Anderson misinterpreted the policy. Pointing to the Cost of Insurance Rates provision, which sets forth the current and guaranteed monthly rates, Wilco contended that the policy gave it discretion to determine Anderson's current monthly rate so long it did not exceed the guaranteed monthly rate. Wilco also argued that, even if Anderson was correct that the current monthly rate must be based on sex, age, and premium class, the phrase "based on" did not mean "exclusively based on," as Anderson asserted.

---

[5] Anderson's theory is that Wilco raised her rates to recoup losses sustained from mispricing certain insurance policies.

In response, Anderson reiterated that the policy mandated that Wilco calculate her current monthly rate "based on the policy cost factors described in [the] policy," which were only age, sex, and premium class. The district court granted Wilco's motion to dismiss finding that the plain language of the policy supported Wilco's interpretation, which the court called "the only . . . reasonable reading of the policy."

Anderson timely appealed.

## II.    Standard of Review

We review *de novo* a district court's order granting a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1334 (11th Cir. 2015); Fed. R. Civ. P. 12(b)(6). Accordingly, "[w]e take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). However, we are not required to accept the legal conclusions in the complaint as true. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted); *see also* Fed. R.

Civ. P. 12(b)(6).  A claim for relief is facially plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.    Discussion

This appeal requires us to make sense of the several provisions governing the calculation of Anderson's monthly cost of insurance rate.  Anderson contends that the policy is ambiguous as to how the current monthly rate should be calculated and that it should be construed in her favor.  So construed, according to Anderson, the policy establishes that Wilco may only calculate her current monthly rate based on her age, sex, and premium class on the date of issue.  Wilco counters that the policy's plain text is unambiguous and that it gives Wilco discretion to set the current monthly rate provided that the amount does not exceed the guaranteed monthly rate.  We agree with Wilco.[6]

---

[6] Anderson also alleged that Wilco breached the implied covenant of good faith and fair dealing, and on appeal Wilco presents arguments about whether Anderson properly stated that claim.  However, the district court did not rule on that issue below, and Anderson raises only the interpretive issue on appeal.  Thus, we do not consider those arguments. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991) (explaining the general rule that we do not consider an issue not decided by the district court).  In any event, Anderson's claim for breach of implied warranty cannot survive if there is no breach of the insurance contract, so the interpretive question is dispositive.

Because the parties agree that Georgia law controls the interpretation of Anderson's policy, we assume that it does. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that law applies."). Under Georgia law, "[a]n insurance policy is a contract and subject to the ordinary rules of contract construction." *Am. Strategic Ins. Corp. v. Helm*, 759 S.E.2d 563, 565 (Ga. Ct. App. 2014). The "cardinal" interpretive rule is "to determine and carry out the intent of the parties." *Ace Am. Ins. Co. v. Wattles Co.*, 930 F.3d 1240, 1252 (11th Cir. 2019) (quotation omitted). "[W]hen faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous." *Murphy v. Ticor Title Ins. Co.*, 729 S.E.2d 21, 24 (Ga. Ct. App. 2012) (quotation omitted) (alteration in original). "If the policy language is clear and unambiguous, the contract must be enforced according to its plain terms." *Ace Am. Ins. Co.*, 930 F.3d at 1252 (citing *Bd. of Comm'rs of Crisp Cnty. v. City Comm'rs of City of Cordele*, 727 S.E.2d 524, 527 (Ga. Ct. App. 2012)). But if an insurance policy is ambiguous, "it is 'construed strictly against the insurer/drafter and in favor of the insured.'" *Id.* (quoting *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996)).

An insurance policy is ambiguous only "if its terms are subject to more than one reasonable interpretation." *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (Ga. 2009) (quotation omitted). Yet "a policy which is susceptible to two

reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction." *Ace Am. Ins. Co.*, 930 F.3d at 1253 (quoting *Murphy*, 729 S.E.2d at 24); *see also Rucker v. Columbia Nat'l Ins. Co.*, 705 S.E.2d 270, 273 (Ga. App. 2010) ("[A] policy provision is not ambiguous even though presenting a question of construction, unless and until an application of the pertinent rules of construction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties." (quotation omitted)). Finally, we note that "ambiguity is not to be created by lifting a clause or a portion of the contract out of context," or by making "hypercritical constructions," and that the "natural, obvious meaning is to be preferred over any curious, hidden meaning which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover." *Payne v. Middlesex Ins. Co.*, 578 S.E.2d 470, 472 (Ga. Ct. App. 2003) (quotation omitted).

In this case, we must apply the aforementioned principles of contract interpretation to determine whether Anderson's policy gave Wilco discretion to set her current monthly rate, or if, instead, the company had to base that rate on certain policy cost factors. For the reasons explained below, we hold that Anderson's policy unambiguously gives Wilco the discretion to set her current monthly rate, so long as that rate does not exceed the guaranteed monthly rate.

At issue is what, if anything, Wilco must consider when setting Anderson's current monthly rate. We look first to the

policy provision governing that rate, the Cost of Insurance Rates provision, which reads: "[The current monthly rate] will be determined by the Company," and "will not be greater than the guaranteed monthly [] rates which are listed on a Policy Data Page." This straightforward provision, which makes no mention of cost factors, gives Wilco discretion to set Anderson's current monthly rate. See Hickman v. GEM Ins. Co., 299 F.3d 1208, 1213 (10th Cir. 2002) (holding that the phrase "as determined by the Company" gave the insurer discretion to calculate expenses).

That Wilco had discretion to set Anderson's current monthly rate is confirmed by the other provisions in Anderson's policy. The policy construed as a whole plainly sets forth two insurance rates: a guaranteed monthly rate based on the enumerated factors (i.e., age, sex, premium class) and the current monthly rate. This dual-rate scheme is apparent throughout the policy. Starting with the Policy Data Page caption, the policy provides that the "actual" monthly rate "will be determined by the company based on the policy cost factors described in your policy," but "will not be greater than" the rates shown in the table of guaranteed monthly rates on that page. The Cost of Insurance provision, in turn, explains that the cost of insurance is calculated, in part, based on "the monthly cost of insurance rate as described in the Cost of Insurance Rates section." And finally, as discussed above, the Cost of Insurance Rates section provides that, while the guaranteed monthly rates "are based on the insured's sex, attained age and premium class on the date of issue" and "are shown on

[the] Policy Data Page," the current monthly rate "will be determined by the Company," but "will not be greater than the guaranteed monthly [] rates which are listed on a Policy Data Page." Taken together, these provisions demonstrate that Wilco was required to calculated Anderson's guaranteed monthly rate based on her age, sex, and premium class, but that this rate was distinct from the current monthly rate, which Wilco had discretion to set at any level, so long as it did not exceed the guaranteed monthly rate.

Anderson disagrees and points to the Policy Data Page caption, which says that the actual monthly cost of insurance will be determined by the company "based on the policy cost factors described in your policy." The problem, of course, is that the policy never mentions policy cost factors in conjunction with the current monthly rate. The only factors mentioned—the insured's sex, attained age, and premium class—relate to the calculation of the guaranteed monthly rate.

To the extent that these provisions conflict—one promising factors, the other not delivering any—the provision specific to Anderson's policy surely controls. The Policy Data Page caption essentially says that the actual cost of insurance will be determined by the company based on to-be-described policy cost factors. It directs the reader to look to "your policy" for the specifics. Looking to Anderson's specific policy, the current monthly rate is determined by the Company, with no mention of factors. Although this is not a textbook "specific controls the general"

situation, see *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (noting that "[t]he general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission"), we cannot say that a provision merely previewing something in the policy (*i.e.*, pointing to a future explanation of how the monthly rate is calculated) should control over the policy provision actually doing the thing previewed (*i.e.*, setting forth how the current monthly rate is calculated). *See Auto-Owners Ins. Co. v. Barnes*, 373 S.E.2d 217, 219 (Ga. App. 1988) (applying the canon to competing policy provisions—one, a specific provision about the type of property covered and the other, a general statement about coverage in the declaration portion of the policy—noting that "the language in the declarations [is] merely a general statement as to the type of property covered by the policy, the terms of coverage for which are set out specifically later in the policy"). Accordingly, the specific provision about the current monthly rate controls to the extent that the two provisions are inconsistent.

Anderson disagrees with this reading of the policy and urges us to hold that the policy is, at the very least, ambiguous, and, therefore, that we must construe it against Wilco. Her ambiguity argument centers around the interaction of the phrase "based on," in the Policy Data Page caption—"[a]ctual monthly Cost of Insurance Rates will be determined by the company *based on* the policy cost factors described in your policy"—with the Cost of

Insurance Rates provision. Citing cases from other courts that have come to opposite conclusions about whether "based on" conveys exclusivity (*i.e.*, that an insurance company can *only* consider the factors that follow the words "based on" in setting monthly cost of insurance rates), Anderson argues that "because the language is at least reasonably susceptible to [an exclusivity] interpretation, the language must be construed against the insurer and in favor of the insured under the applicable rules of construction." And construed in her favor, Anderson argues that the policy requires "Wilco to determine her [current monthly rate] based solely upon [the guaranteed monthly rate factors]."

Anderson's argument about ambiguity is misplaced for several reasons.[7] First, although it is true that under Georgia law an ambiguous policy is construed against the insured, as noted above, even "[a] policy which is susceptible to two reasonable

---

[7] In addition to the reasons discussed above, Anderson's ambiguity argument is unavailing because the insurance policies in the cases she cites, unlike Anderson's policy, provide that the monthly cost of insurance will be "based on" a specific factor or set of factors. *See Yue v. Conseco Life Ins. Co.*, No. CV 08-1506 AHM, 2011 WL 210943, at *2 (C.D. Cal. Jan. 19, 2011) (interpreting an insurance policy that provided that "[c]urrent monthly cost of insurance rates will be determined by the Company based on its expectation as to future mortality experience." (emphasis removed)); *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 761 (8th Cir. 2020); *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp.3d 456, 470 (S.D. N.Y. 2014); *Dean v. United of Omaha Life Ins. Co.*, No. CV 05-6067-GHK, 2007 WL 7079558, at *2–3 (C.D. Cal. Aug. 27, 2007). In contrast, the provision of Anderson's policy addressing the current monthly rate says that the rate "will be determined by the Company."

meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction." *See Ace Am. Ins. Co.*, 930 F.3d at 1252 (quoting *Murphy*, 729 S.E.2d at 24); *see also Staton*, 685 S.E.2d at 265–66 (rejecting the Court of Appeals of Georgia's holding that a policy was ambiguous despite two plausible readings and applying the rule of construction that the written or typed portion of a policy controls over the preprinted portion to resolve the conflicting interpretations). So even if Anderson did present a reasonable alternative reading of the policy, we need not reflexively construe the agreement in her favor. Instead, we first attempt to resolve the conflicting interpretations by employing "the rules of contract construction." *See Ace Am. Ins. Co.*, 930 F.3d at 1252. And, as noted above, after applying those rules of construction, the policy is not ambiguous.

Second, grafting the guaranteed monthly rate factors onto the current monthly rate provision is untenable because it destroys the guaranteed/current monthly rate distinction, cutting against the plain meaning of the Cost of Insurance Rates provision and even the Policy Data Page caption. The current monthly rate provision simply does not mention any factors. ("Current monthly cost of insurance rates will be determined by the Company."). By contrast, the guaranteed monthly rate provision lists the following factors: sex, age, and premium class. The provisions thus set forth two distinct rates—a current monthly rate and a guaranteed monthly rate—with two distinct methods of calculation (*i.e.,* one

as determined by the company and the other based on the enumerated factors).  Our reading gives meaning to this variation; Anderson's reading ignores it.  *See Nat'l Cas. Co. v. Ga. Sch. Bds. Ass'n*, 818 S.E.2d 250, 253 (Ga. 2018) (explaining that "a court is to consider the insurance policy as a whole, and a preferred construction will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions meaningless or mere surplusage").

Third, and relatedly, Anderson's proposed interpretation of the policy—*i.e.*, that Wilco must calculate her current monthly rate exclusively based on her age, sex, and premium class—would render much of the Cost of Insurance Rates provision superfluous because the guaranteed and current monthly rates would be calculated in the exact same way.  *See id.* ("[A] court is to consider the insurance policy as a whole, and . . . not render any of the policy provisions meaningless or mere surplusage").  Reading the policy to require Wilco to base the current monthly rate exclusively on the guaranteed monthly rate factors renders the phrase "will be determined by the Company" meaningless because the insured's age, sex, and premium class, not the company's discretion, would determine the current monthly rate.  Moreover, the entire guaranteed monthly rate provision would be superfluous because the current and guaranteed monthly rates would be the same (*i.e.*, both rates would be based on "the insured's sex, attained age and premium class on the date of

issue")—totally obviating the function of a distinct guaranteed maximum rate.

Fourth, tying the current monthly rate to the guaranteed monthly rate factors undermines the plain meaning of the Policy Data Page caption. *See Ace Am. Ins. Co.*, 930 F.3d at 1252 (explaining that courts must apply the plain meaning of unambiguous policy terms). Much like the Cost of Insurance Rates provision, the caption makes clear that there are two rates—a current and a guaranteed monthly rate. The caption explains that the rates in the table are the guaranteed monthly rates, but that the current monthly rate will be determined "by the company based on the policy cost factors described in your policy." Moreover, the guaranteed monthly rate description in the Cost of Insurance Rates provision tells us that the rates calculated according to the enumerated factors "are shown on a Policy Data Page." And the only rates shown on the Policy Data Page are the rates displayed in the table, which the caption explains are *not* the current monthly payments. Thus, interpreting the policy to require Wilco to base Anderson's current monthly rate on the guaranteed monthly rate factors undermines the plain meaning of the Policy Data Page caption, in addition to the other policy provisions discussed above.

★    ★    ★

In sum, we are faced with competing interpretations of the policy: one reading eviscerates the guaranteed and current monthly rate distinction and the other preserves it. We hold, as Georgia law requires, that the interpretation preserving this

distinction is the correct one. *See Nat'l Cas. Co.*, 818 S.E.2d at 253. Accordingly, the district court did not err in finding that the policy was unambiguous. Under the policy's plain meaning, Wilco had discretion to set Anderson's current monthly rate, so long as that rate did not exceed the guaranteed monthly rate.[8]

For these reasons, we affirm.

**AFFIRMED.**

---

[8] We note that even if Anderson's interpretation of the policy was correct, it is unclear how her proposed reading would benefit her. Wilco concedes that Anderson's current monthly rate cannot exceed the guaranteed monthly rate. Yet Anderson appears to insist that Wilco calculate her current monthly rate in the same way it calculates her guaranteed monthly rate. So Anderson's rates would be even higher if we adopt her interpretation of the policy.