[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11391

Non-Argument Calendar

_____

PMTD RESTAURANTS, LLC,

Plaintiff-Appellant,

*versus*

HOUSTON CASUALTY COMPANY,

Defendant- Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-04191-WMR

_____

Before LAGOA, BRASHER, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this insurance coverage dispute, PMTD Restaurants, LLC ("PMTD") appeals the district court's grant of summary judgment in favor of PMTD's insurer, Houston Casualty Company ("HCC"). No reversible error has been shown; we affirm.

PMTD (a Georgia-based business) is a multi-unit franchise that operates restaurants. PMTD was the named insured in an Employment Practices Liability Insurance Policy ("Policy") issued by HCC (a Texas-based business). The Policy's defined "Policy Period" was between 26 December 2016 and 26 December 2017.[1] Among other things, the Policy provided coverage for employment-based claims of discrimination, harassment, or inappropriate employment conduct.

In July 2016, a PMTD employee ("S.P.") filed a charge of discrimination ("Discrimination Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"). S.P. alleged that she had been subjected to unlawful racial discrimination.

The EEOC notified PMTD of the Discrimination Charge and began an investigation of S.P.'s allegations. In September 2016,

---

[1] HCC issued PMTD a series of insurance policies between December 2015 and December 2019. The only policy at issue in this case is the Policy in effect from 26 December 2016 until 26 December 2017.

22-11391                Opinion of the Court                    3

PMTD participated in a mediation on the Discrimination Charge: a process that was unsuccessful.

The EEOC completed its investigation of S.P.'s allegations and concluded that it was unable to determine whether the complained-of conduct constituted unlawful discrimination. The EEOC issued S.P. a Dismissal and Notice of Rights Letter on 9 December 2016. Never did PMTD notify HCC about the Discrimination Charge, the attempted mediation, or the EEOC's Notice of Rights Letter.

On 30 December 2016, S.P. filed a second charge of discrimination with the EEOC ("Retaliation Charge"), alleging that she had been retaliated against unlawfully after filing her Discrimination Charge. The EEOC investigated S.P.'s allegations but was unable to conclude that unlawful retaliatory conduct had occurred. The EEOC issued S.P. a second Dismissal and Notice of Rights letter in February 2017. PMTD provided no notice to HCC about the Retaliation Charge.

On 16 May 2017, S.P. filed a lawsuit against PMTD ("Underlying Action"). S.P. asserted claims for unlawful race discrimination and retaliation.

Shortly thereafter, PMTD notified HCC of the Underlying Action and sought coverage under the Policy. HCC denied coverage on grounds that the "claim" was made during an earlier policy period and not reported timely to HCC.

In November 2020, PMTD (with no help from HCC) proceeded to a jury trial in the Underlying Action and obtained a complete defense verdict.

Meanwhile, in October 2020, PMTD filed this civil action against HCC.  PMTD asserted a claim for breach of contract based on HCC's denial of coverage.  PMTD sought indemnification for the losses PMTD incurred as a result of the Underlying Action.

The district court granted summary judgment in favor of HCC.  The district court determined that the filing of a charge with the EEOC constituted a "claim" under the Policy.  Because the Discrimination Charge, the Retaliation Charge, and the Underlying Action were all "claims" that arose from "one insured event," the district court determined that the "claims" were all deemed first made in July 2016: before the effective date of the Policy.  The district court thus determined that no coverage existed under the Policy and that HCC was entitled to summary judgment on PMTD's claim for breach of contract.

We review *de novo* a district court's grant of summary judgment.  *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).  The interpretation of a provision in an insurance contract is a question of law subject to *de novo* review.  *See id.*

We are bound by the substantive law of Georgia in deciding this diversity case.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Under Georgia law, "[a]n insurance policy is governed by the ordinary rules of contract construction."  *Banks v. Bhd. Mut.*

*Ins. Co.*, 686 S.E.2d 872, 874 (Ga. Ct. App. 2009). Whether the language in an insurance policy is ambiguous is a matter of law for the court to decide. *Id.*

If the policy language is "clear and unambiguous," the contract is enforced according to its plain terms. *Bd. of Comm'rs of Crisp Cty. v. City Comm'rs of City of Cordele*, 727 S.E.2d 524, 527 (Ga. Ct. App. 2012). When an insurance policy is deemed to be ambiguous, however, it is "construed strictly against the insurer/drafter and in favor of the insured." *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 663 (Ga. 1996) (citing O.C.G.A. § 13-2-2(5)).

A policy provision is ambiguous when it is "subject to more than one reasonable interpretation." *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (Ga. 2009). "[A] policy provision is not ambiguous even though presenting a question of construction, unless and until an application of the pertinent rules of construction leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties." *Ace Am. Ins. Co. v. Wattles, Co.*, 930 F.3d 1240, 1252 (11th Cir. 2019) (citing *Rucker v. Columbia Nat. Ins. Co.*, 705 S.E.2d 270, 273 (Ga. Ct. App. 2010). "[A] policy which is susceptible to two reasonable meanings is not ambiguous if the trial court can resolve the conflicting interpretations by applying the rules of contract construction." *Id.* at 1253 (citing *Murphy v. Ticor Title Ins. Co.*, 729 S.E.2d 21, 24 (Ga. Ct. App. 2012)).

"The words used in policies of insurance, as in all other contracts, bear their usual and common significance, and policies of insurance are, as in all other contracts, to be construed in their ordinary meaning." *Lawyers Title Ins. Corp. v. Griffin*, 691 S.E.2d 633, 636 (Ga. Ct. App. 2010); *see* O.C.G.A. § 13-2-2(2). When a word is not defined by the policy, courts may refer to dictionary definitions to determine a word's ordinary meaning. *See Dixon v. Home Indem. Co.*, 426 S.E.2d 381, 382-83 (Ga. Ct. App. 1992).

Here, the "Policy applies only to 'claims' first made or brought against [PMTD] and reported to [HCC], in writing, within the Policy Period . . .." Under the Policy, "[a]ll 'claims' because of 'one insured event' will be considered to have been made or brought on the date that the first of those 'claims' was made or brought." The Policy defines "one insured event" to mean (among other things) alleged acts of discrimination and retaliation "made or brought by the same claimant." In this case, the parties agree that S.P.'s allegations of discrimination and retaliation constitute "one insured event."

Whether the Policy provides coverage for the Underlying Action hinges on whether the filing of a discrimination charge with the EEOC constitutes a "claim" under the Policy. If so, the Underlying Action is deemed to have been "made or brought" when S.P. filed the Discrimination Charge in July 2016: a date outside of the pertinent Policy Period and thus not covered by the Policy. If not, the Underlying Action might constitute a claim "first made or brought" (and reported to HCC) within the Policy Period.

22-11391                Opinion of the Court                7

We begin our analysis by looking to the plain language of the Policy. The Policy defines "claim" to mean "a written demand received by the insured alleging damages or the filing of a 'suit', or *any administrative proceeding including but not limited to the Equal Employment Opportunity Commission*, or any other state or federal agency or authority with jurisdiction over you." (emphasis added). Because this case involves no written demand for damages or the filing of a "suit," we focus on the Policy's "any administrative proceeding" language.

The parties dispute whether the phrase "any administrative proceeding" includes the filing of a charge of discrimination with the EEOC. PMTD contends that the term "administrative proceeding" does not include employee-filed EEOC charges or EEOC investigations and refers, instead, only to the process following the EEOC's issuance of a Letter of Determination.[2] HCC, on the other hand, contends that "administrative proceeding" should be read more broadly to encompass all proceedings before the EEOC,

---

[2] If -- after an investigation -- the "EEOC determines there is reasonable cause to believe discrimination has occurred," the EEOC will issue both parties "a Letter of Determination stating that there is reason to believe that discrimination occurred and inviting the parties to join the agency in seeking to resolve the charge through an informal process known as conciliation." *See* U.S. Equal Employment Opportunity Commission, *What You Can Expect After a Charge is Filed*, https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed (last visited July 11, 2023).

including the filing of a charge of discrimination and the EEOC's resulting investigation.

We accept that the Policy language might be subject to more than one reasonable interpretation. But our inquiry does not end there. Before we can conclude that the Policy is truly "ambiguous" -- requiring us to construe the Policy in favor of the insured -- we must first determine whether we can resolve the conflicting interpretations by applying the standard rules of contract construction. *See Ace Am. Ins.*, 930 F.3d at 1253-53.

Because the Policy does not define the phrase "administrative proceeding," we construe that phrase according to its ordinary meaning. *See Lawyers Title Ins. Co.*, 691 S.E.2d at 636. The phrase "administrative proceeding" is defined as "[a] hearing, inquiry, *investigation*, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative." Black's Law Dictionary (11th ed. 2019) (emphasis added). The Georgia courts have relied on this definition, stressing that the phrase "administrative proceeding" extends to an agency's investigations. *See Ga. Gov't Transparency & Campaign Fin. Comm'n v. New Ga. Project Action Fund*, 856 S.E.2d 733, 736-37 (Ga. Ct. App. 2021) (relying on the definition of "administrative proceeding" and concluding that, while the statutory phrase "'proceedings before the agency' can be understood to reference a more formal process . . . the phrase can also be understood to encompass an agency's investigations.").

Given the ordinary meaning of the phrase "administrative proceeding," we conclude that the Policy's definition of "claim"

unambiguously encompasses investigations conducted by the EEOC. Because a charge of discrimination filed with the EEOC triggers an EEOC investigation into the alleged acts of discrimination,[3] the filing of an EEOC charge qualifies as a "claim" under the Policy. This interpretation is also consistent with the Policy's requirement that -- to provide written notice of a "claim" to HCC -- PMTD must include "[t]he *written charge*, complaint or demand as applicable." (emphasis added). *See* O.C.G.A. § 13-2-2(4) (providing that "[t]he whole contract should be looked to in arriving at the construction of any part").

Applying the plain and unambiguous Policy language, we agree with the district court's conclusion that the Discrimination Charge constituted a "claim" under the Policy. As a result, all "claims" made or brought by S.P. -- including the Underlying Action -- are deemed to have been made or brought in July 2016. Because these claims were made or brought before the pertinent Policy Period, the district court concluded properly that losses sustained as a result of the Underlying Action were not covered under the Policy. HCC was thus entitled to summary judgment on PMTD's breach-of-contract claim.

AFFIRMED.

---

[3] *See* U.S. Equal Employment Opportunity Commission, *What You Can Expect After a Charge is Filed*, https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed (last visited July 11, 2023).